UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

Civil Action No.

TRUMAN H. WEAVER and
PATTY FUNK, on behalf of
themselves and all others similarly situated,

      Plaintiff,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
Corporation,

      Defendant.

---

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff Truman H. Weaver and Patty Funk ("Plaintiffs"), through their attorneys, The Hannon Law Firm, LLC and John L. Springer, bring this action individually and on behalf of all similarly situated class members as a Class Action under Federal Rule of Civil Procedure 23 against Defendant State Farm Mutual Automobile Insurance Company ("Defendant"), alleging as follows:

### PARTIES, JURISDICTION AND VENUE

1.    At all times relevant to the allegations of this Complaint, Plaintiffs Truman Weaver and Patty Funk resided in Cotopaxi, Fremont County, Colorado.

1

2.      At all times relevant to the allegations of this Complaint, Defendant State Farm Mutual Automobile Insurance Company was an Illinois corporation, authorized to sell automobile or motor vehicle insurance in the State of Colorado.

3.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1).   The amount in controversy exceeds $75,000 exclusive of interest and costs.   There are more than 100 putative class members who are citizens of a different state than Defendant.

4.      This Court has personal jurisdiction over Defendant because Defendant regularly conducts substantial business in Colorado, and has sufficient minimum contacts in Colorado. Defendant intentionally avails itself of this jurisdiction by marketing and selling insurance to thousands of Colorado consumers.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant regularly transacts business in this District, and the events giving rise to this Complaint arose in this District.

## GENERAL ALLEGATIONS

6.      At all times relevant to the allegations of this Complaint, C.R.S. § 10-4-609 was a legislative enactment of the State of Colorado that was in full force and effect.

7.      At all times relevant to the allegations of this Complaint, C.R.S. § 10-4-609(1)(a) provided that, except in the event the named insured rejected such coverage in writing, an automobile or motor vehicle liability insurance policy issued for delivery in the State of Colorado must provide uninsured motorist coverage for the protection of persons insured by the policy who

are legally entitled to recover compensatory damages for bodily injury, sickness, disease and/or death from the owner or driver of an uninsured or underinsured motor vehicle.

8.      At all times relevant to the allegations of this Complaint, C.R.S. § 10-4-609(4) provided that uninsured motorist coverage shall include coverage for compensatory damages for bodily injury which an insured is legally entitled to collect from the owner or operator of an underinsured motor vehicle.   Uninsured and underinsured motorist coverage are hereinafter collectively referred to as "UM coverage."

9.      At all times relevant to the allegations of this Complaint, the term "stacking" meant aggregating or combining of the UM coverage limits of two or more separate automobile or motor vehicle liability insurance policies for the purpose of increasing the total amount of available insurance coverage.

10.     Before December 9, 2014, Plaintiff Funk, acting on behalf of Plaintiff Weaver and herself, applied for automobile or motor vehicle liability insurance policies related to the following motor vehicles: (1) a 1991 Chevrolet pickup truck (2) a 1996 Suzuki motorcycle; and (3) a 2012 Chevrolet Impala.

11.     In December 2014, the Defendant's agent mailed two State Farm form documents, attached hereto and incorporated herein as Appendices 1 and 2, to Plaintiffs.   Each document was entitled "Colorado Uninsured Motor Vehicle Coverage (Acknowledgment of Coverage Selection or Rejection)" (hereinafter "UM Rejection Form").   The documents were associated with two different insurance policies and described different vehicles but otherwise contained identical

3

language.   The documents are hereinafter variously referred to as "Appendices 1 and 2" or the "UM Rejection Forms."

12.     On information and belief, each member of the Plaintiff class was given a UM Rejection Form containing the language of Appendices 1 and 2 for each motor vehicle liability policy issued by Defendant.

13.     Appendix 1 relates to a motor vehicle liability insurance policy that describes a 1991 Chevrolet pickup truck owned by Plaintiff.   Appendix 2 relates to a motor vehicle liability insurance policy that describes the 1996 Suzuki motorcycle owned by Plaintiffs.

14.     The second paragraph of each UM Rejection Form contained the following identical language:

> Uninsured Motor Vehicle Coverage for bodily injury ... , selected on one policy insuring a motor vehicle owned and insured by you or any family member who resides in your household will apply to any accident for which the selected Uninsured Motor Vehicle Coverage is payable for that bodily injury, ... , including death.   The described vehicle on that one policy need not be involved in the accident for Uninsured Motor Vehicle Coverage to apply.

15.     Relying on the language in the UM Rejection Form, on December 9, 2014, Plaintiffs signed Appendices 1 and 2.   An "X" was placed next to the following language on each document: "reject Uninsured Motor Vehicle Coverage on this policy."   Appendices 1 and 2 were returned to the State Farm agent.

16.     Defendant issued a separate motor vehicle liability insurance policy to Plaintiffs, which described the above-mentioned 1991 Chevrolet pickup truck.   The policy provided bodily injury liability coverage with limits of $100,000/$300,000.

4

17.     Defendant issued a separate motor vehicle liability insurance policy to Plaintiffs, which described the above-mentioned 1996 Suzuki motorcycle.   The policy provided liability coverage for bodily injury with limits of $25,000/$50,000.

18.     Defendant issued a separate motor vehicle liability insurance policy to Plaintiffs, which described the above-mentioned 2012 Chevrolet Impala owned by Plaintiffs.   The policy provided liability coverage for bodily injury with limits of $100,000/$300,000, and UM coverage with limits of $100,000/$300,000.

19.     Each of the above-mentioned motor vehicle liability insurance policies had been renewed prior to, and was in full force and effect on, February 17, 2016.   On that date, Plaintiff Weaver sustained serious bodily injuries when he was involved in a two-vehicle collision in Canon City, Fremont County, Colorado, while he was driving the above-mentioned 1991Chevrolet pickup truck.   The collision was caused by the negligence of the other driver, legally entitling Plaintiff Weaver to collect compensatory damages from that driver for bodily injury.

20.     Following the above-mentioned collision, Plaintiff Weaver was transported to Penrose/St. Francis Hospital in Colorado Springs, Colorado, where he received medical treatment and care for his accident-related injuries.   The total amount of Plaintiff Weaver's accident-related medical and hospital expenses exceeds $300,000.

21.     By at least March 21, 2016, Defendant had received billing statements from Penrose/St. Francis Hospital totaling $251,867.59 for the cost of the treatment and care that Plaintiff Weaver received at the hospital, beginning February 17, 2016.

22.     As a result of Plaintiffs' having indicated rejection of UM coverage on the two above-mentioned policies in reliance on the language in the UM Rejection Forms in Appendices 1 and 2 describing the 1991 pickup truck and the 1996 Suzuki motorcycle, Defendant did not pay Plaintiff Weaver the amount of coverage that would have been available had they not rejected UM coverage on such policies.   Instead, Defendant paid Plaintiff Weaver only $100,000 of UM coverage, which was the amount of coverage available under the policy describing the Chevrolet Impala.

23.     The driver who caused the above-mentioned collision was insured under a motor vehicle liability insurance policy issued by AAA Insurance Company, with liability coverage limits of $25,000/$50,000.

24.     If the rejection of UM coverage had not been indicated on the UM Rejection Forms, Defendant would have been required to aggregate or combine (stack) the UM limits of each of the three above-mentioned policies for the purpose of increasing the amount of UM coverage that would apply to the collision.   Had Plaintiffs not rejected UM coverage on the policies describing the 1991 Chevrolet pickup truck and the 1996 Suzuki motorcycle, with coverage limits of $100,000/$300,000 and $25,000/$50,000, respectively, the amount of available coverage would have been increased by $125,000 ($100,000 from the policy that described the pickup and $25,000 from the policy that described the motorcycle) for a total amount of $225,000 of available coverage.

25.     C.R.S. § 10-4-609(1)(a) does not require an insurer, in connection with a named insured's rejecting UM coverage, to provide any specific information to the insured concerning

such coverage including, but not limited to, information concerning the positive and negative consequences of rejecting UM coverage on any of multiple policies.

26.    Pursuant to the provisions of C.R.S. § 10-4-609(2), an insurer is required to inform the named insured that (1) each motor vehicle liability policy delivered or issued in Colorado, insuring motor vehicles licensed for highway use in Colorado, must provide uninsured motor vehicle coverage, and (2) that the insured may reject such coverage in writing.   This information was presented in identical language in the first paragraph of each UM Rejection Form.

27.    Pursuant to the provisions of C.R.S. § 10-4-609(2), an insurer is required to offer the insured the right to obtain higher limits of uninsured motorist coverage for bodily injury, sickness or disease, including death, with limits equal to his or her bodily injury liability limits.   The UM Rejection Forms (Appendices 1 and 2) contained the following language: "I acknowledge and agree that I have been offered Uninsured Motor Vehicle Coverage for bodily injury sickness, or disease, including death, with limits equal to my bodily injury liability limits and instead I …" Following this language, the UM Rejection Forms contained boxes for either (1) reject UM coverage with limits equal to bodily injury liability limits and selecting lower UM coverage limits; or (2) reject UM coverage on the policy.   This information was presented in identical language in each UM Rejection Form that was presented to Plaintiffs.

28.    The information in Paragraph 14 above is not required to be given by an insurer to a named insured under the provisions of C.R.S. § 10-4-609(1)(a) or otherwise.

29.    The information set forth in the second paragraph of each UM Rejection Form informs the named insured that if he or she has multiple motor vehicle liability insurance

7

policies, it is an unnecessary and redundant expense to have UM coverage on more than one policy, because coverage will apply to any accident, regardless of whether or not the vehicle described in the policy was involved in the accident.

30.     The above-mentioned information, contained in the second paragraph of each UM Rejection Form, failed to inform the named insured class members, including Plaintiffs, of a significant and material fact, namely that if he or she rejects UM coverage on any one of multiple liability insurance policies, he or she will lose the opportunity for aggregating or combining (stacking) the UM coverage of each separately owned policy where UM coverage has been rejected in the event any insured under the policy sustains bodily injury in any accident where the primary policy provides inadequate coverage for the damage and harm he or she sustains.

31.     When Defendant voluntarily provided the information in paragraph 14 above in the UM Rejection Forms, it had the duty to simultaneously divulge and disclose to the named insured all material facts bearing on the negative effect that such rejection of UM coverage would have on the total amount of UM coverage that would apply to any accident.

32.     When Defendant specifically and voluntarily represented in the UM Rejection Forms the effect of an insured's having UM coverage on only one of multiple policies, Defendant had a duty to disclose to the named insured additional material information, namely that by rejecting UM coverage on any one or more of multiple automobile or motor vehicle liability insurance policies issued by Defendant, any insured under the policy would lose the opportunity for stacking the UM coverage limits on such policy or policies, thereby losing the ability to increase the total amount of available UM coverage in the event he or she was involved

8

in an accident and the primary policy provided inadequate coverage for compensatory damages for bodily injury he or she was legally entitled to collect from the owner or operator of an uninsured or underinsured motor vehicle.

33.     Defendant's representation in the UM Rejection Forms, which was presented in the second paragraph of the UM Rejection Forms, constituted an intentionally fraudulent or misleading representation in that, although it was a truthful representation as far as it went, it was fraudulent, and/or Defendant knew or believed it to be materially misleading because it did not also disclose that by rejecting UM coverage on one or more, but less than all, of multiple policies, any insured under the policy lost the opportunity to aggregate or combine (stack) such coverage.

34.     To remedy the harmful effect of having the above-described fraudulent or misleading misrepresentation contained in each UM Rejection Form, Plaintiffs and the Plaintiff class are entitled to have the entry of an order adjudging that (1) any UM Rejection Form on which UM coverage was rejected is retroactively invalidated or rescinded; (2) Defendant is directed and/or enjoined to modify the UM Rejection Form to provide the material described above in paragraph 32, (3) Plaintiffs and the Plaintiff class have the right to accept UM coverage on any policy issued pursuant to a UM Rejection Form on which UM coverage had been rejected and to have that coverage provided retroactively at the applicable cost, (4) Plaintiff Weaver and any member of the hereinafter-defined Subclass A who retroactively accept UM coverage on one or more policies, pursuant to a reformed UM Rejection Form(s), and who pay the applicable cost therefor, are entitled to recover the UM benefits that are retroactively owed under the additional

coverage that has been accepted; and (5) Defendant's denial of the payment of UM benefits on any policy where UM coverage had been rejected with a fraudulent and/or misleading UM Rejection Form constituted an unreasonable action, entitling any insured who is retroactively owed benefits, under the additional coverage that he or she has accepted, to recover, under the provisions of C.R.S. § 10-3-1115(1)(a) and C.R.S. § 10-3-1116(1), reasonable attorney fees and court costs and twice the amount of the covered benefit.

## <u>CLASS DEFINITION</u>

35.     The class is described as follows:

All persons who are named insureds under an automobile or motor vehicle insurance policy issued by Defendant for delivery in Colorado who owned multiple automobiles or motor vehicles insured by policies issued by Defendant during the same coverage period, each policy of which described a separate vehicle, which the named insured, pursuant to the form attached at Appendix 1 or other form containing the information in Paragraph 14 above, rejected uninsured motorist coverage on at least one of the multiple policies, and all insureds under such policies for whom State Farm was or is obligated to pay UM coverage and failed to provide coverage that would have been available and owed by State Farm by stacking coverage limits of one or more policies where UM coverage had been rejected.

Subclass A: All members of the class who had a claim for whom State Farm was obligated to pay UM coverage under one of the separate policies described above, and for whom State Farm failed to provide coverage that would have been available and owed by State Farm by stacking coverage limits of one or more policies where UM coverage had been rejected.

Subclass B: All members of the class who are named insureds who rejected UM coverage on at least one of multiple policies in their current policy period pursuant to the form attached at Appendix 1 or other form containing the information in Paragraph 14 above, and who are not members of Subclass A.

36.     Excluded from the class are:

a.      officers, directors, agents, current or former employees or representatives of Defendant;

b.      Defendant and any entities in which Defendant has a controlling interest;

c.      any entities in which Defendant's officers, directors or employees are employed and any of the legal representatives, heirs, successors or assigns of the Defendant;

d.      all persons who have brought an individual suit for invalidation or rescission of Defendant's Colorado UM Rejection Form for a policy issued to them; and

e.      all persons or entities that properly execute and timely file a request for exclusion from the class.

## CLASS ALLEGATIONS

37.      A class action under Fed.R.Civ.P. 23 is the proper procedure to manage the claims of Plaintiffs and the Plaintiff class.    The membership in the class is so large that joinder of all members would be impracticable.    Additionally, there are questions of law or fact common to the class which predominate over individual questions, the claims or defenses of the representative parties are typical of the claims or defenses of the class and the representative Plaintiff will fairly and adequately protect the interests of the class.

38.      This action satisfies all the requirements of Rule 23 of the Federal Rules of Civil Procedure, including numerosity, commonality, typicality, adequacy, predominance and superiority.

39.      **Numerosity: Federal Rule of Civil Procedure 23(a)(1).**    The membership of the class is so numerous that joinder of all members is impracticable.    While the exact number

is not known at this time, it is ascertainable and identifiable by appropriate discovery from Defendant, and is expected to number in the hundreds.

40.      **Commonality and Predominance: Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).**      The claims made by Plaintiffs meet the commonality requirement because they present shared questions of law and fact, and resolving these questions will resolve the classwide litigation.      These shared questions predominate over individual questions, and they include, but are not limited to:

a.      whether Defendant issued to Plaintiffs and the Plaintiff class multiple automobile or motor vehicle liability insurance policies, each of which described a separate motor vehicle;

b.      whether Defendant, in connection with issuing said multiple automobile or motor vehicle liability insurance policies to Plaintiffs and the Plaintiff class, provided to Plaintiffs and members of the class one or more UM Rejection Forms that were identical or substantially similar to the UM Rejection Form in Appendix 1;

c.      whether the second paragraph of Defendant's said UM Rejection Form constituted a misleading and/or fraudulent representation on the basis that it made a representation concerning UM coverage that was true as far as it went, but which was materially misleading as it omitted and concealed a material fact;

d.      whether the UM Rejection Forms are invalid and/or legally ineffective to reject UM coverage on an automobile or motor vehicle liability insurance policy; and

e. whether equitable relief, in the form of (1) rescission of Defendant's UM Rejection Forms, (2) reformation of the UM Rejection Forms and (3) affording Plaintiffs and the members of the Plaintiff class the opportunity to retroactively consider whether they wish to indicate any rejections on the forms, is justified;

f. whether declaratory relief is proper for unpaid UM benefits due and owing because of the misleading UM Rejection Forms; and

g. whether Plaintiffs and the Plaintiff class suffered damages.

41. **Typicality: Federal Rule of Civil Procedure 23(a)(3).** Plaintiffs' claims are typical of those of the other class members because Plaintiffs, like every other class member, rejected UM coverage on at least one of multiple motor vehicle liability insurance policies issued by Defendant, by using one or more of the above-mentioned UM Rejection Forms which had been prepared by Defendant, the second paragraph of which, constituted, as alleged above, a materially misleading and/or fraudulent representation.

42. The claims of the Class Representative Plaintiffs are furthermore typical of other class members because they make the same claims as other class members. Plaintiffs seek retroactive invalidation or rescission of the UM Rejection Forms, seek declaratory, injunctive or equitable relief and seek damages in the form of the value of the underinsured motorist benefits that they were not paid had they not acted in reliance on the language in the UM Rejection Forms.

43. **Adequacy: Federal Rule of Civil Procedure 23(a)(4).** Plaintiffs will fairly and adequately represent and protect the interests of the class in that they have no disabling conflicts

of interest that would be antagonistic to those of the other members of the class.    The interests of the Plaintiffs as class representatives are consistent with those of the other members of the class.    Plaintiffs seek no relief that is antagonistic or adverse to the members of the class and the infringement of the rights and the damage they have suffered are typical of other class members.

44.    Plaintiffs are represented by experienced and able counsel who have expertise in the area of tort law, trial practice and class action representation.    Plaintiffs' counsel is experienced in prosecuting class actions and managing notice and the institution of remedies for the class members.

45.    **Declaratory and Injunctive Relief: Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally acceptable to Plaintiffs and the Plaintiff class, thereby making it appropriate to grant final injunctive relief or corresponding declaratory relief for the benefit of Plaintiffs and the Plaintiff class as a whole.

46.    **Superiority: Federal Rule of Civil Procedure 23(b)(3).**    Class litigation is an appropriate method for fair and efficient adjudication of the claims involved.    Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit class members to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require.

47.    The nature of this action makes the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and the members of the class for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage

14

since it would be able to exploit and overwhelm the limited resources of each class member with

superior financial and legal resources; the costs of individual suits could unreasonably consume

the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs

were exposed is representative of that experienced by the members of the class and will establish

the right of each member of the class to recover on the cause of action alleged; and individual

actions would create a risk of inconsistent results and would be unnecessary and duplicative of

this litigation.

**FIRST CLASS CLAIM FOR RELIEF**
**(DECLARATORY, INJUNCTIVE OR EQUITABLE RELIEF**
**INVALIDATION AND/OR  RESCISSION OF UM REJECTION FORMS)**

48.      Plaintiffs and the members of the class incorporate all previous allegations as if

more fully set forth herein.

49.      The UM Rejection Forms, which was prepared by Defendant, presented to

Plaintiffs and used by Plaintiffs and the named insured members of the class to indicate rejection

of UM coverage on one or more of multiple automobile or motor vehicle liability insurance

policies, were and are invalid and/or legally ineffective to indicate a named insured's statutorily

required written rejection of UM coverage pursuant to the provisions of C.R.S. § 10-4-609(1)(a),

because the UM Rejection Form contained a representation concerning UM coverage which was

fraudulent and/or misleading, in that the representation did not, as alleged above, additionally

inform the insured that the opportunity for stacking UM coverage limits on multiple policies

would be lost with respect to all policies where UM coverage is rejected.

50.     Plaintiffs and the Plaintiff class therefore request injunctive relief and/or corresponding declaratory relief and/or equitable relief pursuant to Fed. R. Civ. P. 57.   Because each UM Rejection Form that was used by Plaintiffs and the Plaintiff class to reject UM coverage on an automobile or motor vehicle liability insurance policy issued by Defendant was invalid and legally ineffective, each such UM Rejection Form must be invalidated and/or rescinded and the named insured must be given the opportunity to consider whether he or she wishes to indicate any rejection on the UM Rejection Form based on a reformed UM Rejection Form containing the language in Paragraph 32 above.

51.     The Court must also enter declaratory, injunctive and/or equitable relief that all insureds in Subclass A for whom the named insured accepts UM coverage pursuant to a reformed UM Rejection Form are entitled to the amount of UM benefits that are retroactively due and owing under the additional UM coverage that has been accepted.

## SECOND CLASS CLAIM FOR RELIEF
## (REQUEST FOR INJUNCTIVE RELIEF)

52.     Plaintiffs and the Plaintiff class incorporate the preceding allegations as if fully set forth herein.

53.     Plaintiffs and the Plaintiff class request that Defendant be enjoined and ordered to (1) reform the UM Rejection Form that it furnishes to insureds for the rejection of UM coverage to include the additional material information described in paragraph 32 above and to furnish that revised form to Plaintiffs and the Plaintiff class so that they will have the opportunity to retroactively accept or reject UM coverage on each separate policy; and (2) not accept and/or use any rejection of UM coverage in the form of Appendix 1or a substantially similar form

16

containing the information in paragraph 14 above without having made the disclosure described in paragraph 32 above and giving the named insured an opportunity to accept UM coverage on the separate policy to which the rejection relates.

### THIRD CLASS CLAIM FOR RELIEF
### (BAD FAITH BREACH OF INSURANCE CONTRACT)

54.     Plaintiffs and Plaintiff class incorporate all previous allegations as if more fully set forth herein.

55.     As a provider of insurance services to the public, Defendant at all times had a duty to be actuated by good faith and fair dealing in everything pertaining thereto, abstain from deceptive or misleading practices and keep, observe and practice the principles of law and equity in all matters pertaining to the business of insurance.

56.     Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith and fair dealing with their insureds.   Pursuant to its implied duty of good faith and fair dealing, Defendant owed to Plaintiffs and the Plaintiff class an obligation to treat the interests of Plaintiffs and the Plaintiff class with equal consideration to its own interests.

57.     Defendant has breached its duty of good faith and fair dealing owed to Plaintiffs and the Plaintiff class including, but not limited to:

        a.      failing to give equal consideration to the interest of Plaintiffs and the Plaintiff class, its insureds;

        b.      failing to inform Plaintiffs and the Plaintiff class of the material fact that by rejecting UM coverage on one or more of multiple automobile or motor vehicle liability

17

insurance policies issued by Defendant and describing separate vehicles, the opportunity to aggregate or combine (stack) the rejected insurance coverage(s) would be lost in the event of an accident in which the at-fault driver had no or inadequate insurance coverage;

        c.      unreasonably delaying and/or withholding benefits under the insurance policy, without a reasonable basis for delaying and/or withholding benefits, with knowledge or reckless disregard of a lack of reasonable basis for delaying and/or withholding benefits; and

        d.      any further acts which may be discovered.

58. Defendant's aforesaid conduct was unreasonable and Defendant either knew such conduct was unreasonable or recklessly disregarded the fact that the conduct was unreasonable.

59. As a direct and proximate result of Defendant's breach of its duty of good faith and fair dealing, Plaintiffs and the Plaintiff class have sustained injury, harm and damage in the form of (1) the loss of the UM benefits they were not paid as a direct result of Plaintiffs' and the named insured class members' having rejected UM coverage on one or more automobile or motor vehicle liability insurance policies, pursuant to the above-mentioned fraudulent and/or misleading UM Rejection Forms; and (2) the loss of interest on such unpaid benefits at the statutory rate in an amount to be proved at trial.

<div align="center">

**FOURTH CLASS CLAIM FOR RELIEF**
**(NON-DISCLOSURE OR CONCEALMENT)**

</div>

60. Plaintiffs and the Plaintiff class incorporate all previous allegations as if more fully set forth herein.

61. It is material information to Plaintiffs and the named insured class members in deciding to accept or reject UM Coverage on each of separate insurance policies, that by

rejecting UM coverage on any one or more of multiple automobile or motor vehicle liability insurance policies issued by Defendant, any insured under the policy would lose the opportunity for stacking the UM coverage on such policy or policies in the event he or she was involved in an accident and the policy for which UM coverage was not rejected provided inadequate coverage for compensatory damages for bodily injury he or she was legally entitled to collect from the owner or operator of an uninsured or underinsured motor vehicle.

62.     A reasonable person, under the circumstances, would regard this information as material information in deciding whether to accept or reject UM coverage on an automobile or motor vehicle liability insurance policy, and Defendant State Farm knew that a named insured would consider this information to be materially important in making such a decision.

63.     Defendant failed to disclose and/or concealed the material information described in Paragraph 32 above with the intent of creating a false or misleading impression in the minds of Plaintiffs and the named insured members of the class as to the actual consequence of rejecting UM coverage on an automobile or motor vehicle liability insurance policy.

64.     Defendant failed to disclose and/or concealed the material information in Paragraph 32 above with the intent that the Plaintiffs and the named insured members of the class would take a course of action in rejecting UM coverage that they would not have taken if the material information in Paragraph 32 above had been disclosed to them.

65.     In rejecting UM coverage on a UM Rejection Form, Plaintiffs and the named insured members of the class acted in justifiable reliance that Defendant had provided the whole

truth to them about the effect that rejecting UM coverage on one or more, but less than all, of the policies would have on the amount of UM coverage that potentially would apply to any accident.

66.      The reliance by Plaintiffs and the Plaintiff class was justified.

67.      The reliance by Plaintiffs and the Plaintiff class caused injury and damage to Plaintiffs and the Plaintiff class.

68.      As a direct and approximate result of Defendant's above-mentioned acts, nondisclosure and/or concealment, Plaintiffs and the members of Subclass A have sustained injury and damage consisting of the loss of the UM benefits that were not paid as a direct result of rejected coverage on one or more fraudulent and/or misleading UM Rejection Forms and the loss of interest calculated at the statutory rate on such unpaid benefits.

## FIFTH CLASS CLAIM FOR RELIEF
## (UNREASONABLE DENIAL OF PAYMENT OF CLAIMS FOR BENEFITS OWED)

69.      Plaintiffs and the Plaintiff class incorporate all preceding allegations as if more fully set forth herein.

70.      As a result of Plaintiffs and the members of Subclass A having used the above-alleged fraudulent and/or misleading UM Rejection Forms to reject UM coverage on one or more of multiple automobile or motor vehicle liability insurance policies, Defendant has refused to stack the coverage limits on such policies in order to increase the total amount of UM coverage available to pay compensatory damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured or underinsured motor vehicle, thereby constructively denying the payment of claims for benefits owed to first-party claimants.

71.    The denial by Defendant of the payment of claims for UM benefits owed to Plaintiffs and the members of Subclass A, who were first-party claimants, was an unreasonable action on the part of Defendant because it was a direct result of its wrongful conduct in using the fraudulent and/or misleading UM Rejection Forms to obtain the rejection of UM coverage on one or more of multiple policies, thereby entitling such insureds to recover, under the provisions of C.R.S. § 10-3-1115(1)(a) and C.R.S. § 10-3-1116(1), reasonable attorney fees and court costs and two times the covered benefit.

## PLAINTIFF WEAVER'S INDIVIDUAL CLAIM FOR RELIEF
## (VIOLATION OF COLORADO CONSUMER PROTECTION ACT)

72.    Plaintiff Weaver incorporates all preceding allegations as if more fully set forth herein.

73.    Plaintiff Weaver was actual consumers of the Defendant's goods, services or property and was injured as a result of Defendant's deceptive trade practices, pursuant to C.R.S. § 6-1-113(1)(a).

74.    Defendant, in violation of the provisions of C.R.S. § 6-1-105(1)(u), acted to intentionally and/or deceptively induce Plaintiff Weaver to enter into automobile or motor vehicle liability insurance contracts that did not provide UM coverage as required by C.R.S. § 10-4-609(1)(a) by representing in the second paragraph of each UM Rejection Form that UM coverage on one of multiple policies would apply to any accident, including an accident that did not involve the described vehicle, without also presenting the material information described in paragraph 32, concerning the opportunity to aggregate or combine (stack) UM coverage limits on

multiple policies and how that coverage would be lost if UM coverage is rejected on one or more such policies.

75.     Defendant's conduct was bad faith conduct within the meaning of C.R.S. § 6-1-113(2.3).

76.     Defendant's above-described deceptive trade practices caused Plaintiff Weaver to reject UM coverage, to his detriment, on one or more automobile or motor vehicle liability insurance policies, which were issued by Defendant, and which described separate vehicles.

77.     Had Plaintiffs been advised of the impact of their rejecting UM coverage on the policies describing the 1991 Chevrolet pickup truck and the 1996 Suzuki motorcycle, they would have accepted such coverage and paid the associated premiums.

78.     Accordingly, Plaintiff Weaver has suffered injury-in-fact by (1) being issued two automobile or motor vehicle liability insurance policies that did not provide UM coverage; and (2) being paid inadequate UM coverage in connection with his claim for underinsured motorist benefits, which he presented to Defendant, and which arose out of an accident where he sustained bodily injury and was legally entitled to collect compensatory damages from the owners or driver of the motor vehicle for which the primary policy provided inadequate UM coverage for the damage he sustained, without the opportunity for stacking the UM coverage limits on the above-mentioned policies because such coverage had been rejected on the UM Rejection Forms; and (3) losing the time value of the UM Coverage that he would have collected from Defendant through stacking had he not rejected UM coverage on the UM Rejection Forms.

79.     Plaintiff Weaver is entitled to recover from Defendant (1) the value of the UM benefits that he was not paid as a direct result of his having rejected UM coverage on the UM Rejection Forms without having been advised, in the language of the form, as to the impact of rejecting UM coverage on one or more of multiple policies; and (2) interest on the benefits that were not paid, calculated at the statutory rate.

80.     Pursuant to C.R.S. § 6-1-113(2), Plaintiff Weaver is entitled to recover three times the amount of his actual damages, plus the costs of this action together with reasonable attorneys' fees as determined by the Court.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and as class representatives, and the members of the class pray for relief and judgment against Defendant as follows:

a.     for an order certifying the class, and appointing Plaintiffs and their counsel to represent the class;

b.     for an order directing Defendant to pay the cost of giving notice to the class;

c.     for an order declaring invalid and/or rescinding of the UM Rejection Forms executed by Plaintiffs and the named insured class members;

d.     for an order giving the named insured the opportunity to consider whether he or she wishes to indicate any rejection on the UM Rejection Form based on a reformed UM Rejection Form containing the language in Paragraph 32 above;

e.     for an order enjoining Defendant from using UM Rejection Forms similar in form to Appendix 1 as a method for obtaining an insured's rejection of UM coverage;

f.    for an order directing Defendant to disclose the information identified in Paragraph 32 above to both current and future policyholders and allowing them to revise their selection or rejection of UM coverage;

g.    for an order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct along with any applicable relief;

h.    for an order awarding Plaintiff Weaver and members of Sublcass A any UM benefits that were not paid as a result of rejected coverage on one or more UM Rejection Forms together with the loss of interest calculated at the statutory rate on such unpaid benefits;

i.    for an order awarding Plaintiff Weaver three times the amount of actual damages sustained, plus the costs of this action together with reasonable attorney fees as determined by the Court pursuant to C.R.S. § 6-1-113(2);

j.    for an order awarding Plaintiff Weaver and members of Sublcass A, pursuant to C.R.S § 10-3-1115(1)(a) and C.R.S. § 10-3-1116(1), reasonable attorney fees and court costs and two times the amount of any UM benefit that was not paid to an insured by Defendant as the result of his or her having rejected UM coverage on one or more of multiple policies;

k.    for other reasonable attorney fees, as permitted by law;

l.    for costs incurred, as permitted by law;

m.    for prejudgment and postjudgment interest at the maximum allowable rate on any damages awarded; and

       n.       for such other and further relief that this Court deems just and proper under equity and law.

<div align="center">

**DEMAND FOR JURY TRIAL**

</div>

Plaintiffs and Plaintiff class demand a trial by jury.

Respectfully submitted this 12th day of September, 2017.

<div style="margin-left: 40%">

s/ Kevin S. Hannon
**Kevin S. Hannon**
**Justin D. Blum**
The Hannon Law Firm, LLC
1641 Downing Street
Denver, CO   80218
(303) 861-8800 - Telephone
(303) 861-8855 – Facsimile
E-mail: khannon@hannonlaw.com
E-mail: jblum@hannonlaw.com

And

s/ John L. Springer
**John L. Springer**
Attorney at Law
15394 E. Monmouth Place
Aurora, CO 80015
(303) 364-9508 – Telephone
E-mail: jlspringer01@aol.com

*Attorneys for the Plaintiffs and Plaintiff Class*

</div>

<div align="center">

25

</div>