IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02208-MEH

TRUMAN H. WEAVER, and
PATTY FUNK,
on behalf of themselves and all others similarly situated,

 Plaintiffs,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,

 Defendant.

___

# ORDER

___

**Michael E. Hegarty, United States Magistrate Judge**.

 Defendant State Farm Mutual Automobile Insurance Company ("Defendant") has moved to dismiss all six claims brought by Plaintiffs Truman H. Weaver and Patty Funk ("Plaintiffs") on behalf of themselves and others similarly situated. The Court finds that Plaintiffs' claims are all based on the same legal theory—fraudulent nondisclosure—and Plaintiffs' allegations are insufficient to state any plausible claim for relief on this basis. Therefore, the Court will grant Defendant's motion.

## BACKGROUND

**I. Statement of Facts**

 The following are factual allegations from the operative Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

 Plaintiffs are Colorado residents who, in December 2014, sought to purchase automobile

liability insurance from Defendant for three vehicles: a 2012 Chevrolet Impala, a 1991 Chevrolet pickup truck, and a 1996 Suzuki motorcycle. Compl. ¶¶ 1, 10–11, ECF No. 1. Colorado law requires that an automobile liability insurance policy issued in the state provide uninsured motorist ("UM" or "UIM") coverage for the protection of the insured for injuries incurred in an accident caused by an uninsured or underinsured motorist, unless the insured rejects that coverage in writing. *Id.* ¶ 7 (citing Colo. Rev. Stat. § 10-4-609(1)(a)). In conjunction with these policies, Defendant sent Plaintiffs two identical forms separately pertaining to the 1991 pickup truck and the 1996 motorcycle titled "Colorado Uninsured Motor Vehicle Coverage (Acknowledgment of Coverage Selection or Rejection)" ("UM Rejection Form"). *Id.* ¶ 11; *see id.* Attach. 1, at 2; *id.* Attach. 2, at 2. The two forms had the following identical language in the second paragraph (the "Second Paragraph"):

> Uninsured Motor Vehicle Coverage for bodily injury, sickness, or disease, including death, selected on one policy insuring a motor vehicle owned and insured by you or any family member who resides in your household will apply to any accident for which the selected Uninsured Motor Vehicle Coverage is payable for that bodily injury, sickness, or disease, including death. The described vehicle on that one policy need not be involved in the accident for Uninsured Motor Vehicle Coverage to apply.[1]

*Id.* Attach. 1, at 2; *id.* Attach. 2, at 2. Plaintiffs allege Colorado law does not require an insurer to provide this, or any other, information regarding the rejection of UM insurance. *Id.* ¶¶ 25, 28. On these forms, Plaintiffs rejected the UM coverage for both vehicles. *Id.* ¶ 15; *see id.* Attach. 1, at 2; *id.* Attach. 2, at 2. Defendant then issued Plaintiffs policies on the three vehicles. *Id.* ¶¶ 16–18. The

---

[1] Under Colorado law, UM insurance must "run with the insured." *See Jaimes v. State Farm Mut. Auto. Ins. Co.*, 53 P.3d 743, 747 (Colo. App. 2002). "The effect of [this requirement is] to provide [the] insureds UM/UIM coverage in any vehicle they occupy when injured, no matter who owns the vehicle or whether it is insured on the owner's policy." *Briggs v. Am. Nat'l Prop. & Cas. Co.*, 209 P.3d 1181, 1184 (Colo. App. 2009). The parties agree that the Second Paragraph articulates that the UM insurance in the policies will "run with the insured." *See* Mot. 5, ECF No. 21; Resp. 2, ECF No. 22.

policies provided for liability and UM insurance on the 2012 Impala and only liability insurance on the 1991 pickup truck and 1996 motorcycle. *Id.*

These policies were in effect on February 17, 2016, when Mr. Weaver sustained serious injuries in a two-vehicle accident caused by the other driver's negligence. *Id.* ¶ 19. Mr. Weaver's medical expenses from this accident exceeded $300,000. *Id.* ¶ 20. The other driver's liability insurance was insufficient to cover Mr. Weaver's medical expenses, so Defendant paid Mr. Weaver $100,000, the maximum available under the policy in which he accepted UM coverage. *Id.* ¶¶ 22–23. Had Plaintiffs not rejected UM insurance on the other two policies, Mr. Weaver would have been able to "stack" that coverage, meaning that he would have been entitled to coverage on all three policies, resulting in an additional $125,000 in coverage. *Id.* ¶¶ 9, 24.

## II.     Procedural History

Plaintiffs bring the present suit and assert six claims for relief alleging Defendant's disclosures in the UM Rejection Form fraudulently induced them to reject the UM coverage. *Id.* ¶¶ 48–80. The first five claims ask for equitable and declaratory relief and are founded on the alleged fraudulent nondisclosure. *Id.* ¶¶ 48–71. The sixth claim is brought by Mr. Weaver individually under the Colorado Consumer Protection Act. *Id.* ¶¶ 72–80. However, Defendant argues, and Plaintiffs effectively concede, this claim also is founded in a fraudulent nondisclosure theory. *See* Resp. 18 ("Plaintiffs' Consumer Protection Act [c]laim pleads a plausible claim for relief. Plaintiffs plead that failure to disclose was misleading."). Therefore, all of Plaintiffs claims necessarily rely on the same legal theory. The present motion asks the Court to dismiss all claims, because Plaintiffs have not stated a claim for fraudulent nondisclosure. Mot., ECF No. 21.

## **LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 678–80. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more

4

than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation marks and citation omitted).

## ANALYSIS

Plaintiffs' theory of liability supporting their claims is founded solely on the inclusion of the admittedly truthful, but allegedly fraudulently incomplete, Second Paragraph in the UM Rejection Form. Plaintiffs' allegations do not assert any representation made by Defendant was, itself, untruthful or fraudulent. Plaintiffs explicitly allege that each representation made by Defendant "was a truthful representation as far as it went . . . ." Compl. ¶ 33, ECF No. 1. Further, Plaintiffs allege Defendant had no duty under Colorado law to include any specific information pertaining to the rejection of UM coverage. *Id.* ¶ 25. Thus, Plaintiffs do not allege that Defendant's disclosure pertaining to UM insurance was somehow incomplete in a manner that violated an affirmative duty under Colorado law. *See id.* By Plaintiffs' own theory of the case, had Defendant omitted the Second Paragraph in the UM Rejection Form, Plaintiffs would have no claim against Defendant.

However, Plaintiffs argue the inclusion of the Second Paragraph created a greater duty to disclose additional information about UM coverage. Plaintiffs argue, "[w]hen Defendant voluntarily provided the information in [the Second Paragraph] in the UM Rejection Forms, it had the duty to

simultaneously . . . disclose to [Plaintiffs] all material facts bearing on the negative effect that such rejection . . . would have on the total amount of UM coverage" to which Plaintiffs would be entitled in the event they were injured by an uninsured motorist. Compl. ¶ 31. Plaintiffs argue that "[o]nce [Defendant] undertook to explain the UM coverage on one policy will apply to any accident, . . . it had the duty to explain that if the injured rejected UM coverage on all but one of multiple policies[,] he or she would lose the ability to stack the rejected coverage." Resp. 7, ECF No. 22.

Plaintiffs' claims are thus founded on the tort of fraudulent misrepresentation, arguing the alleged "half-truth" in the Second Paragraph induced them to reject the additional UM coverage. The elements of fraudulent concealment[2] in Colorado are:

> (1) concealment of a material fact that in equity and good conscience should be disclosed; (2) knowledge on the part of the party against whom the claim is asserted that such a fact is being concealed; (3) ignorance of that fact on the part of the one from whom the fact is concealed; (4) the intention that the concealment be acted upon; and (5) action on the concealment resulting in damages.

*Mullen v. Allstate Ins. Co.*, 232 P.3d 168, 173 (Colo. 2009). Defendant now argues all claims should be dismissed, because Plaintiffs' allegations do not plausibly state the first element: a duty to disclose the availability of stacking to Plaintiffs. Mot. 9–13, ECF No. 21; Reply 2–9, ECF No. 24.

"The existence and scope of a tort duty is a question of law to be determined by the court." *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 16 (Colo. App. 2010) (quoting *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1193 (Colo. App. 2008)). To support their argument that Defendant owed them a duty to disclose the availability of stacking, because it included the Second Paragraph in the UM Rejection Form, Plaintiffs rely entirely on a principle in the Restatement

---

[2] Colorado courts have recognized that "[t]he terms fraudulent concealment and fraudulent nondisclosure are sometimes used interchangeably," and "[t]he two torts require essentially the same elements." *Wisehart v. Zions Bancorporation*, 49 P.3d 1200, 1204 (Colo. App. 2002).

(Second) of Torts.[3] Section 529 of the Restatement states, "A representation stating the truth so far as it goes but which the maker knows or believes to be materially misleading because of his failure to state additional or qualifying matter is a fraudulent misrepresentation." Restatement (Second) of Torts § 529 (Am. Law Inst. 1977).

While Plaintiffs cite to § 529 to argue the inclusion of the Second Paragraph triggered a duty to disclose additional information, they cite to no authority defining the scope of such purported duty. Plaintiffs' arguments to the bounds of that duty, however, suggest it is enormously broad. They argue the inclusion of the Second Paragraph triggered a duty to "disclose . . . all material facts bearing on the negative effect that such rejection . . . would have on the total amount of UM coverage that would apply to any accident." Compl. ¶ 31. Defendant denounces this broad interpretation and argues that any duty created by the Second Paragraph did not extend to the availability of stacking, because stating "that UIM coverage follows the person says nothing about UIM stacking." Reply 5. Notably, Defendant also cites to no authority supporting its interpretation of the scope of any duty created by some partial representation.

Like the parties, the Court has found no binding, nor even persuasive, authority defining the scope of the duty to disclose additional, complete information after the disclosure of partial information. But at least one Colorado court has addressed the nature of such a duty. In *Eckley v. Colorado Real Estate Commission*, 752 P.2d 68 (Colo. 1988), a real estate broker required a $15,000 deposit from a perspective purchaser of a bar/lounge and secured permission from the buyer to

---

[3] Colorado courts look to the Restatement to identify and define the scope of a duty to disclose. *Mallon Oil Co. v. Bowen/Edwards Assocs., Inc.*, 965 P.2d 105, 111 (Colo. 1998) ("To determine whether the circumstances of a particular case give rise to a duty to disclose in 'equity or good conscience,' the Restatement (Second) of Torts . . . provides helpful guidance.").

disperse funds from the "escrow deposit" for "whiskey, wine and beer[,] the payments due on the loans[,] and the September rent, utilities and etc. [sic]." *Id.* at 72 (third alteration in original). The broker then placed the money in his "broker operating account," not an escrow account, and used more than $10,000 of the funds "for payment of outstanding obligations associated with the lounge business and for repairs necessary to bring the premises into compliance with building code and lease requirements." *Id.* The Colorado Supreme Court upheld the commission's finding that the broker made a "willful misrepresentation" under Colo. Rev. Stat. § 12-61-113(1)(a). *Id.* at 77. Citing the Restatement § 529, the court found that the document authorizing funds for "whiskey, wine and beer[,] the payments due on the loans[,] and the September rent, utilities and etc." did not "reveal that the $15,000 would be used to bring the premises into compliance with code and lease requirements, as in fact it was." *Id.* The court held, "the fact that payments were made from the $15,000 that were of a different nature from those listed in the agreement made the disbursement agreement misleading." *Id.*

I believe *Eckley* can properly guide my decision. In *Eckley*, the half-truth was the incomplete nature of an explanation of how funds from the "deposit" would be used. *Id.* Here, Plaintiffs allege the contractual language disclosing that UM coverage "runs with the person" was only a half-truth, because it did not disclose the distinct feature that additional UM insurance could be "stacked" to entitle an insured to additional benefits. The Court disagrees. Nothing about the Second Paragraph was a half-truth like the agreement language in *Eckley*.

Notably, the Court might be persuaded that the Second Paragraph is misleading (like the document in *Eckley*) if Defendant's UM coverage "ran with the insured," yet contained undisclosed exclusions. For example, if the policy prevented the application of UM coverage in the event the

8

insured were injured outside of Colorado or, perhaps, on a weekend, the argument that the Second Paragraph was a half-truth would be more persuasive, because it would contain true, but incomplete, information. *See Eckley*, 752 P.2d at 77 (finding a document that accurately disclosed how some, but not all, funds from a deposit would be disbursed to be materially misleading).

Plaintiffs' characterization of the supposed misrepresentation reveals a fundamental flaw in their argument. Plaintiffs contend, "[Defendant's] disclosure [in the Second Paragraph] is partial because it disclosed the positive attributes of rejecting UM coverage, but did not disclose the negative consequence of rejecting that coverage." Resp. 12. However, the Second Paragraph does *not* disclose the positive or negative consequences of rejecting UM coverage. Rather, it accurately describes (so far as Plaintiffs allege) the nature of UM insurance—that it runs with the insured, not with the vehicle. This disclosure is not a half-truth, nor is it incomplete. Because the Second Paragraph does not in "equity and good conscience" require Defendant to disclose that UM insurance could be stacked, the Court dismisses Plaintiffs' claims.

## **CONCLUSION**

Here, all of Plaintiffs' claims rely on the premise that the inclusion of the Second Paragraph amounts to a fraudulent nondisclosure. However, the paragraph contains no "half-truth" that created a duty for Defendant to make a more complete disclosure. Therefore, Plaintiffs' claims, all based on fraudulent nondisclosure, fail. Accordingly, Defendant's Motion to Dismiss [filed November 15, 2017; ECF No. 21] is **granted**. The Clerk of the Court is directed to close this case.

Entered and dated this 27th day of March, 2018, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge